Good morning, Ms. Carvelin. Good morning, Your Honor. You reserved your three minutes for rebuttal. I did. Again, whenever you're ready. Thank you. May it please the Court, Your Honor, Stephanie Carvelin. I'm counsel for appellant George Goings. Mr. Goings had the right to defend himself under Vermont law when a drunk and angry neighbor presented himself at Mr. Goings' door in the middle of the night, demanding that Mr. Goings come out so the neighbor could beat Mr. Goings' ass. So he opened the door? He did open the door, Your Honor, yes. So I'm confused why that alone that voluntarily placing himself in that direct contact. So he doesn't voluntarily receive A-H at his door, but he does then open the door. How does that not defeat the idea of self-defense? Your Honor, there had been an ongoing series of debates or disputes between these two individuals. On both sides, there had been complaints made to the landlord. There was nothing unreasonable or nothing that disqualifies Mr. Goings from claiming self-defense by him opening the door when his neighbor approaches him at 2 in the morning to say to the guy, go away, which is what he did say to the man. There's no dispute here. Most of these facts come from A-H's statement, the neighbor. A-H says, I went there, I intended, I wasn't going to kill him. I was only going to break a bone. I was only going to smash his face, his 64-year-old face with my 26-year-old hands into the ground. And Mr. Goings, it's also not disputed that Mr. Goings asked him to leave, said you have no right to be here, you're too old for this conversation. And he knew he was at risk of that much younger man assaulting him. And that was what A-H was telling him, I'm going to assault you. And so he needed to bring a gun to the door with him because he knew he was at risk of that assault. Obviously, Judge, he didn't need to bring a gun to the door, but that's what he did. And the other thing I want to point out is that A-H did not claim self-defense under Vermont law. And so I want to ask about Dragon, which I understand that it's not to be used by the defendant if he has another means of avoiding the assault. And so the question is, is by choosing to open the door, as opposed to waiting until he, like, broke the door down, is he not available, is the self-defense claim not available to him? No. I would say that Dragon does not dictate that the self-defense is not available. Okay. Well, explain to me why. Right. You wouldn't dispute that it says if you have another means of avoiding it, right? I think, yes, Your Honor. And I think that's, you know, sort of inherent in all self-defense. You don't – I think that's inherent, the concept of self-defense, that the use of force has to be reasonable. And inherently, if there is another readily available, obvious to that individual, which is part of the law of Vermont, means of avoiding that, then it's not reasonable. But you have to look at what happened when, minute by minute, what happens here. Mr. – it was not unreasonable for Mr. Goings to open the door to try to tell his neighbor, who had never assaulted him before, although there had been words between them. Well, right. The question is not whether or not it was reasonable to open the door. The question was whether or not opening the door eliminates his option to claim self-defense. And I would say it doesn't, Your Honor. Okay. Well, so then maybe you can help me out. How do you draw the dots between he has to – are you saying it was unavoidable for him to open the door? No. I'm not saying it was unavoidable. But if the standard under Vermont law, under Dragon, is that he needs to undertake the means available to him to avoid the assault? At the time he uses or attempts to use the physical force. Not when he opens the door, but when he attempts to then respond to what's coming at him. And you also have to evaluate at that moment, does it – is it – So you actually are saying that self-defense is like a minute by minute? That can't be right. Because then as soon as somebody punches – if you were provoking them, and then as soon as somebody punches you, you then claim, oh, well, I had no choice but to protect myself, it would swallow the rule. At some point, we can't be having to do things on split-second assessments. But that is the way that self-defense unfolds, isn't it, Your Honor? I mean, it's the way those sort of circumstances unfold. Okay. So let me ask the question another way. If we disagree with you and think that he doesn't have a self-defense claim because he opened the door, how does that affect your client's likelihood of prevailing? Well, if you conclude that he had to call the police, had to close the door, had to wait to see if A.H. broke down the door, then obviously you have rejected the self-defense claim. Can I just ask you – I would say that's not the correct interpretation for my point. I just want you to go back to the government's threshold argument, because I'm not sure I understand why we would need to address these challenges. Yeah. The district court said explicitly that he would impose the same sentence regardless of these guideline calculations. And then, you know, we do have a case where it says you can't just robotically say that and avoid review. But that's not what happened here. There was a long explanation of why. And, in fact, he referenced the – you have – this is an 11C1C plea, right? So the range that you and your client agreed to, the low end of that range was 54 months, right? Correct, to 19. So you were not urging the judge to impose anything less than 54 months. Correct. And the judge imposed 57 months. Yes. So didn't he adequately explain why, even if these guideline issues all went your client's way, that he still would impose the 57 months rather than the 54 months because of the other 35 – 53A factors? Didn't – wasn't that sufficient? I think they're two different concepts. That's your sort of question about, Your Honor. I'm not saying that he didn't adequately explain it. What I'm saying is that he had – the judge came up with the wrong guidelines. And it is true – I know, but the law says if he adequately explains why he would reach the same number regardless of the guidelines, we don't review it. You also have case law, United States v. Feldman, among others, that says when there is a dramatic difference between or significant – it was twice in Feldman, it was twice here – between the guidelines, if correctly calculated, and the guidelines that the district court – It wasn't quite that dramatic because you were only – regardless of the guideline calculations, you were only asking for 54 months. So we're talking about a three-month difference here. I disagree. I understand that's the government's argument, Your Honor, but I still think if district court, in determining whether you're going to impose the 54, which is the minimum under the – If we were to remand this because of an inaccurate explanation for why he imposed the 57 months regardless of the guideline calculations, what more would the district court say to satisfy us? It's not a matter of what the district court would say. It's that the district court would have the correct guideline calculation and make the determination of the sentence. There's nothing the district court would say. The district court would have to do the It just could not say, it doesn't matter to me in this case what the guideline calculations, because I've come up with my own independent assessment under the 35 of the three factors. But under – To say no, you can't do that? Under your case law, under Feldman, as among other cases, you have remanded, Your Honor. Because it was not an adequate explanation for why, in light of a dramatic difference in the ranges. We don't have a lack of an explanation here, I don't think, and you haven't explained to me what additional explanation could be provided. I'm not saying that. I'm saying that under Feldman and some other cases, of course, has remanded, not only when there's been an insufficient explanation, but when the difference between the guidelines, if correctly calculated, and the guidelines as the district court thought them to be, were sufficiently disparate, that that takes a second look by the district court. Okay. Thank you. May I? Go ahead. I'm interested in hearing about the alcohol abstinence special condition.  Can you explain to me why you think it is not self-evident? I think it's not self-evident, Your Honor, because alcohol addiction is not the same as opioid addiction. Essentially, what the record supports is a condition that says Mr. Goins needs to be treated for drug addiction, heroin, fentanyl, other opioids. I would say that the record is not, and there's no dispute. Right. And we're talking about the abstinence of alcohol. Yes. So I guess what you're saying is that the DUI of a million years ago and one violation for legally driving, but in violation of, is not enough to suggest that someone is not enough of a record supporting the imposition of an abstinence. First, the violation was dismissed, Your Honor, so I would say it has no legal significance or factual significance. Is that really appropriate? I mean, it was a violation of his parole, right? But you don't have a finding to that effect. Okay. You have a dismissal. There was a finding that he had a blood alcohol level of .176. That is, yes, the DUI that was 13 years prior. Plain error review. There was no objection. Why would it be plain error for a district court to see someone as a, I think different drugs over a long period of time to say that, and a DUI conviction, that you're not going to drink alcohol during the treatment, where you have the ability, I think you would agree with me, you have the ability, if he goes into his treatment provider and they say, and he says, you know, I'd like to drink alcohol when I'm under substance abuse treatment. And they're like, no problem. You could go back to the district court the next day and say his treatment providers don't think alcohol is a problem and that you could get a modification of this instantly, right? Whether you can modify it later or not, I don't think addresses the issue of whether it was imposed correctly. Well, no, but I'm suggesting we're on plain error review. There was no discussion of this. And there is some evidence of alcohol abuse in this. There's a lot of evidence of drug abuse and some evidence of alcohol abuse, right? There was. First of all, Your Honor, I don't agree that it's plain error review in MATA and MAVR-CAMP, which are both violation of supervised release places. This Court applied modified plain error review. It's an issue this Court has repeatedly left open. Was it recommended in the PSR, this condition? It was. He did have notice. This is, you know, plain error applies when the defendant had a meaningful opportunity to object and failed to do so. I disagree, Your Honor. I think I quote language directly from MATA that the Court made that finding. And it says both because the defendant did not have sufficient notice and because there's a lesser burden to the criminal justice system for correcting a sentence. All right. Thank you. Thank you. All right. We'll hear from the government. Mr. Banker. Good morning, Your Honor. May it please the Court. Josh Banker from the District of Vermont, representing the United States in this matter. Your Honor, the Court should affirm the sentence in this case. The district court did not commit any reversible error. And in any event, those errors were harmless. The first thing I'd like to do is try to synthesize what the Court has put forward so far today by trying to distinguish Feldman a little bit more and minimize that case. If I understand the argument thus far and if the Court agrees that the defendant in this case could have avoided the assault in this matter, then the issue narrows to whether or not the district court's imposition of a serious bodily injury enhancement was an error. And the amount of a gap between the defendant's offense level and advisory sentencing guidelines range narrows once we're doing that analysis. Under 2A2.2b, there are actually multiple levels for a bodily injury. And I have not heard the defendant argue here today or in his papers that there was no bodily injury whatsoever. And is it your position, which I think it will be that we don't even have to reach that, if we credit the statement of the district court that it would have imposed the same sentence regardless? I'm sorry, Your Honor. I heard just the end of that. That if we credit the statement of the district court that the same sentence would have been imposed regardless. That's correct, Your Honor. So we don't even need to get into the business of figuring any of this stuff out. Yes, Your Honor. Okay. I'm interested in the government's view on why this alcohol special condition was self-evident. Your Honor. I mean, the abstinence one in particular. Yes, Your Honor. I mean, the thing that I am thinking about is how long ago the DUI was. Your Honor, the facts in this case speak for themselves. I think the court is either going to find that the DUI, as it's presented in the PSR, is enough or it's not. I will note that the district court did discuss the DUI during the sentencing hearing. I believe that was at page 128 of the. . . Maybe I'll ask the question another way. Is there some gap between or is there some limit that the government believes is appropriate on how far to look back on an offense and the connection between that offense and a condition? In other words, this was 15 years ago. If it had been 30 years ago, would you have thought that it was still appropriate to impose an abstinence requirement? Your Honor, without trying to set down a bright line rule, I think the facts of this case lend themselves to considering that 15-year gap is. . .  Well, tell me why. Because there is a long history of substance abuse. The government's view is that because alcohol is a subset of a drug condition, if someone has a documented drug problem, we can infer that the specific type of drug, i.e. alcohol, also serves some sort of objective or limiting that? Maybe I'll ask the question a different way. What of the appropriate factors do you think is furthered or related or connected to by imposing the alcohol abstinence requirement? I think in terms of setting a sentence in this particular case, Your Honor, I think it goes toward imposing that condition of supervised release to ensure that the defendant is able to be rehabilitated and to rejoin society as a part of the supervised release. Okay, so you think saying no alcohol is what is important to make him be able to be rejoining society so he can't go to bars, he can't hang out when he is watching friends, he can't meet with coworkers after work? Well, Your Honor, I'm not sure that that's what the condition says. I think the condition says that he's not allowed to imbibe alcohol. Right. And for somebody who is undergoing the substance abuse treatment that this generation. I mean, what I think your argument basically boils down to is that if you've got a drug problem, you also need an alcohol prohibition in order to be able to meet that. Particularly where there is even an older history of alcohol abuse in the defendant's life. Isn't that a key factor in the analysis, that you have a long history of substantial drug abuse of numerous drugs, and even though it is old, a DUI with an extremely high blood alcohol level indicating an alcohol problem that was embedded in the drug use problem. Yes, Your Honor. And that it wouldn't be clear error for a judge to think that that alcohol problem might still persist with the drug problem. Yes, Your Honor. And it's plain error because if they had raised that at the sentencing, if they had said, Judge, we think he can drink alcohol, what a judge might have done was ask the government to look into, I don't even know, do you know whether a treatment provider, when someone is undergoing substance abuse treatment, is it standard to allow them to drink alcohol? I don't want to make that representation here today, Your Honor. I would assume it would be reasonable. If someone raised, I'd like to drink, then the district court judge would say, government, before I impose this alcohol condition, can you see whether or not the program he's going to be in allows him to do that or not? Yes, Your Honor. I think that would be reasonable. And I will just note, as Judge Merriam pointed out, the defendant did have notice of this particular condition in the PSR. And, in fact, the district judge in this case also orally imposed that condition. That's at page 124 of the record. Your Honor, unless there are further questions for me, I think the court understands the government's positions, and I'll rest on the papers. All right. Thank you. Thank you, Your Honor. Ms. Carvin, you have three minutes. Yes, Your Honor. Just to sort of finish up that argument, Your Honor, it's abstained from alcohol before and after treatment. I've never seen that as a condition. Also, if this record is sufficient, then essentially anyone with a DUI of any period  No. If someone had no history of drug abuse at all, they had no history of drug abuse at all, except they had a DUI in 2009. Then the district judge might not impose any substance abuse treatment. And if he or she did, might not impose this subcondition, right? But here, Your Honor, essentially that's a saying is that somebody who has an opiate problem has an alcohol problem. I think the analysis is whether No, there's not. There's evidence that he had an alcohol problem while he had an opioid problem, right? There's evidence that 13 years before, he was convicted of a DUI. And, yes, you're correct. It was a very high DUI reading. That, to me, does not solve the argument, answer the argument of whether 13 years later a district court can impose a condition that someone abstained from alcohol because they have a current drug problem and they have to abstain before and during treatment. Was he also later arrested for a DUI, but it turns out that his alcohol level is just under the limit, about in 2014? No. My memory of that is that Okay. My memory of that, Your Honor, is that there were drugs found, that they, it was not an alcohol problem. Well, that's the second DUI that he did get arrested for. We've got one where there was an arrest that said when they initially arrested him, they suspected him of DUI, and it turned out his blood alcohol level, this was in 2014, was .065, which I guess is maybe it was a .08 at the time in  That's paragraph 61 of the PSR. Okay. And then there is an actual DUI, which is based on the influence of drugs rather than alcohol. Right. So we have a 2014 arrest where he's got a blood alcohol level of .065. Right. And then we have another driving-related arrest, but in that one it doesn't, he does positive for everything but alcohol in 2022. And that's not sufficient put together. The original DUI, the second arrest, which turns out to be just short of the limit, and the DUI in 2022, which is not alcohol-related. No. I would say that that's not sufficient for, in 2022, to impose a condition that Mr. Goins abstain from alcohol before and after his treatment for opioid addiction. If I can just briefly get back to the self-defense claim, Your Honor, I think that you're imposing a requirement that doesn't exist under the law of Vermont. Someone does not have an obligation to hide in their home, not come out and try to diffuse the situation in order to then use self-defense if the situation develops. One last thing, because I see we have a very brief period of time left. I would urge the court, at my client's request, to review the videotape of the incident that is part of the record. Thank you. Thank you both. We'll reserve the decision. Have a good day. Thank you.